1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DOUGLAS HAROLD DOYLE,                     No. 2:15-cv-2069 WBS DB P

12                     Petitioner,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   RONALD RACKLEY,

15                     Respondent.

16

17          Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a

18   writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on December 13, 2010 in the Placer County Superior Court on one count of

20   driving under the influence.  He seeks federal habeas relief on the grounds that his three strikes

21   sentence of 25 years to life violates his rights to due process, equal protection of the laws, to be

22   free of cruel and unusual punishment, and to be free of double jeopardy.  Upon careful

23   consideration of the record and the applicable law, the undersigned will recommend denial of

24   petitioner's application for habeas corpus relief.

25                                **BACKGROUND**

26          In its unpublished memorandum and opinion affirming petitioner's judgment of

27   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

28   following factual and procedural summary:

                                        1

## FACTS

Under the influence of valium, cocaine, and alcohol, defendant nonetheless got behind the wheel of his van in December 1987. Going southbound on Highway 89, defendant sped around a blind curve in the oncoming lane to pass cars in his own lane. He hit an oncoming car head-on, killing the driver of the oncoming car. As a result, in 1988, he pleaded guilty to DUI manslaughter. (Pen. Code, § 191.5, subd. (a).)

The 1988 DUI manslaughter conviction was not defendant's first brush with the law, and it would not be his last. Most seriously, defendant was convicted of spousal abuse in 1996 and assault with a deadly weapon in 2007.

In August 2008, defendant again drove drunk on Highway 89, this time northbound, and again he passed on a blind curve. Fortunately, defendant did not cause another collision, and, again fortunately, a sheriff's deputy saw the unsafe driving and stopped defendant. After observing that defendant was drunk, the deputy arrested defendant for DUI.

## PROCEDURE

The district attorney charged defendant by information with felony DUI, with a prior DUI manslaughter. (Veh. Code, §§ 23152, subds. (a) & (b), 23550.5, subd. (b).) The district attorney also alleged that defendant had two prior strike convictions (the 1988 DUI manslaughter conviction (Pen. Code, § 191.5) and the 2007 assault with a deadly weapon conviction (Pen. Code, § 245)) and had four prior prison terms (Pen. Code, § 667.5, subd. (b)).

Defendant pleaded guilty to felony DUI, with a prior DUI manslaughter. He also admitted the prior serious felony convictions and prison terms. He did so with the understanding that this exposed him to a potential sentence of 29 years to life under the Three Strikes law.

The trial court considered and denied a *Romero*[fn] motion to strike one or both of the prior serious felony convictions. The court sentenced defendant under the Three Strikes law to state prison for an indeterminate term of 25 years to life. It stayed the prior prison term enhancements.

[fn] *People v. Superior Court (Romero )* (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 (*Romero* ).

People v. Doyle, 220 Cal. App. 4th 1251, 1256-57 (2013) (one footnote omitted).

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28

2

U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06).  "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'"  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel,

////

4

1  applying the normal standards of appellate review," could reasonably conclude that the finding is

2  supported by the record.  Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

3      The second test, whether the state court's fact-finding process is insufficient, requires the

4  federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-

5  finding process] is pointed out would be unreasonable in holding that the state court's fact-finding

6  process was adequate."  Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d

7  943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not

8  automatically render its fact finding process unreasonable.  Id. at 1147.  Further, a state court may

9  make factual findings without an evidentiary hearing if "the record conclusively establishes a fact

10  or where petitioner's factual allegations are entirely without credibility."  Perez v. Rosario, 459

11  F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

12      If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews

13  the merits of the claim de novo.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see

14  also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we

15  may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,

16  we must decide the habeas petition by considering de novo the constitutional issues raised.").  For

17  the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of

18  28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the]

19  claim in State court proceedings" and by meeting the federal case law standards for the

20  presentation of evidence in a federal habeas proceeding.  See Cullen v. Pinholster, 563 U.S. 170,

21  186 (2011).

22      The court looks to the last reasoned state court decision as the basis for the state court

23  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

24  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from

25  a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

26  reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

27  banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim

28  has been presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 292 (2013).

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853 (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)). This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Richter, 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**PETITIONER'S CLAIMS**

Petitioner's claims are directed at his sentence. He states five claims for relief: (1) the dual use of sentencing factors violates the Fifth and Fourteenth Amendments; (2) the trial court

abused its discretion when it refused to strike the prior conviction; (3) the imposition of a 25 years-to-life sentence on a misdemeanor DUI is a violation of the Equal Protection Clause; (4) the imposition of a 25 years-to-life sentence on a misdemeanor violates the Eighth Amendment; and (5) double-counting the prior DUI violates the Double Jeopardy Clause.

Respondent argues that petitioner's first two claims are unexhausted because petitioner made arguments based only on state law before the California Supreme Court. In addition, respondent argues the state court's decision denying the remaining claims, was not contrary to or an unreasonable application of federal law. Finally, respondent argues that petitioner's claims are barred as untimely.

The statute of limitations issue is not jurisdictional and courts may consider the merits of a habeas petition despite a timeliness issue if the merits may be more easily resolved. Day v. McDonough, 547 U.S. 198, 205, 210 (2006) (a district court has discretion to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition); Bruno v. Director, CDCR, No. CIV S-02-2339 LKK EFB P, 2010 WL 367538, at *2 (E.D. Cal. Jan. 26, 2010) ("[T]he court elects to deny petitioner's habeas petition on the merits rather than reach the equitable tolling issues."). In the present case, the court finds it can resolve the merits of petitioner's claims without reaching the statute of limitations and potential tolling issues.

**I.        Claims One and Two – Dual Use of Prior Conviction Violates Due Process**

Petitioner argues that "prior judicial authorities" prohibit using the same prior conviction both to elevate the crime and as a strike. Therefore, he argues, the trial court abused its discretion in refusing to strike the prior conviction from sentencing consideration. Respondent contends petitioner failed to exhaust federal law bases for these claims.

**A.   Exhaustion**

**1.   Legal Standards**

The exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before

presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).

The state court has had an opportunity to rule on the merits when the petitioner has fairly presented the claim to that court.  The fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based.  Picard, 404 U.S. at 277-78.  Generally, it is "not enough that all the facts necessary to support the federal claim were before the state courts...or that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982). Instead,

> [i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365 (1995).  Accordingly, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  Gray v. Netherland, 518 U.S. 152, 162-63 (1996).  The United States Supreme Court has held that a federal district court may not entertain a petition for habeas corpus unless the petitioner has exhausted state remedies with respect to each of the claims raised.  Rose v. Lundy, 455 U.S. 509, 522 (1982).  A mixed petition containing both exhausted and unexhausted claims must be dismissed.  Id.

### 2.   Did Petitioner Exhaust Claims One and Two?

In order to exhaust his claims, petitioner must have raised them before the California Supreme Court.  In his petition for review, petitioner described claim one as follows:  "Do prior authorities of this Court that have construed sentence augmentation statutes to prohibit double use of the same sentencing factor . . . prohibit using the same prior conviction to elevate a misdemeanor to a felony to re-elevate the misdemeanor-turned-felony to 'strikes' status . . . ?"  (LD 5 at 1.[1])  He described claim two as trial court error based on the success of claim one.  (Id.)

---

[1] On January 25, 2016, respondent lodged relevant portions of the state court record.  (See ECF No. 15.)  Documents are cited herein by their Lodged Document or "LD" number.

While the focus of petitioner's argument in his petition for review was the construction of state law, as he had before the state Court of Appeal, petitioner did briefly argue that his Fifth and Fourteenth Amendment rights were violated by the "imposition of a criminal punishment greater than that permitted by state law . . . and under the Fifth Amendment, due to multiple punishments contravening state law." (LD 5 at 19; LD 1 at 31.) These arguments were sufficient to have put the state courts on notice that petitioner was raising federal constitutional claims. See Jones v. Smith, 231 F.3d 1227, 1231 (9th Cir. 2000) (An explicit invocation of a federal constitutional right exhausts the federal claim even if the state court briefs relied predominantly on state court cases.) The fact that the state court did not explicitly address the federal constitutional issues does not compel the conclusion that petitioner did not fairly present them. See Dye v. Hofbauer, 546 U.S. 1, 3 (2005) (per curiam) (Once the petitioner fairly presents the claim to the state courts, exhaustion is satisfied even if the state court's decision is silent on the particular claim.)

Accordingly, petitioner adequately raised the federal constitutional aspects of claims one and two before the California Supreme Court and those arguments have been exhausted.

### B. Merits of Claims One and Two

The California Court of Appeal denied these claims on state law grounds. After considering both legislative intent and prior state case law, the court found that state law permits the use of a prior DUI manslaughter conviction to both increase a new DUI to a felony and to count as a strike for purposes of Three Strikes sentencing. Doyle, 220 Cal. App. 4th at 1257-64. When a state court decision rejects some of a petitioner's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson, 568 U.S. at 292. For unexplained state court decisions, this court "must determine what arguments or theories . . . could have supported, the state court's" rejection of the claim "and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Richter, 562 U.S. at 102.

In his petition, petitioner does not explain the basis for his Fifth and Fourteenth Amendment claims here. In his brief before the state Court of Appeal, petitioner argued that the

9

Fifth and Fourteenth Amendments were violated by the imposition of a sentence "greater than that permitted by state law" and the Fifth Amendment was violated "due to multiple punishments contravening state law." (LD 1 at 31.) That state court brief cites four federal cases for these propositions. None support petitioner's arguments.

In the first, <u>Wasko v. Vasquez</u>, 820 F.2d 1090 (9th Cir. 1987), the Court of Appeals considered a habeas petitioner's due process claim that his state-court imposed sentence of eight months had been "corrected" by the state Department of Corrections to two years. The court held the imposition of a sentence beyond that permitted by state law violated due process. 820 F.2d at 1091 n.2. In the present case, the state courts have interpreted state law to permit the double-counting of the prior DUI manslaughter conviction. This court is bound by the state court's determination of its own laws. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); <u>see also</u> <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

The only exception to that rule is the "highly unusual case in which the 'interpretation is clearly untenable and amounts to a subterfuge to avoid federal review' of a constitutional violation." <u>Butler v. Curry</u>, 528 F.3d 624, 642 (9th Cir. 2008). The California Court of Appeal's determination that double-counting was appropriate appears to be consistent with prior case law and with the statutes themselves. In fact, at least one other California Court of Appeal has so held since then. <u>See</u> <u>People v. Lee</u>, No. E062961, 2015 WL 4554627, at *3 (Cal. Ct. App. 4th Dist. July 28, 2015). Nothing suggests its determination was merely a subterfuge.

In the second case cited by petitioner, a civil rights action brought under 42 U.S.C. § 1983, the Supreme Court considered whether a state prisoner has a liberty interest in parole release that is protected by the Due Process Clause. <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987). The Court held that state statutory law created a presumption that parole release would be granted in certain situations. <u>Id.</u> at 377-78. Petitioner does not allege any aspect of state law created a "liberty interest" which the state courts violated. Therefore, the court does not find <u>Allen</u> to be controlling.

10

Petitioner then cites two cases for his argument that he suffered multiple punishments in violation of state law – <u>Dept. of Revenue of Montana v. Kurth Ranch</u>, 511 U.S. 767, 769 n.1 (1994) and <u>Jones v. Thomas</u>, 491 U.S. 376, 381 (1989). To the extent petitioner complains of a state law violation, as discussed above this court is bound by the state court's determinations of its laws. The cited portions of <u>Kurth Ranch</u> and <u>Jones</u> address double jeopardy issues. To the extent petitioner is making a double jeopardy argument, that issue is addressed below in the discussion of claim five.

Because he fails to demonstrate that his federal constitutional claims are supported by any federal authority, petitioner should not succeed on his Fifth and Fourteenth Amendment arguments in claims one and two.

## II.   Claim Three – Equal Protection[2]

Petitioner argues here that a person with a misdemeanor DUI and a prior offense more serious than DUI manslaughter, which would not have elevated his misdemeanor DUI to a felony, may get a lesser sentence. He contends that disparity violates the Equal Protection Clause. The California Court of Appeal rejected this claim on the grounds that petitioner is not similarly situated to a person with a more serious prior offense. Respondent argues that there is no clearly established federal law requiring application of equal protection principles where the persons at issue are not similarly situated. For the reasons set forth below, this court agrees.

### A.  Decision of the State Court

> Defendant contends that the Three Strikes sentence violates his equal protection rights under the federal and state Constitutions. He argues that the Legislature's scheme for elevating DUI offenses to felonies with potential Three Strikes sentencing because of the offender's prior DUI manslaughter conviction fails constitutional scrutiny because other DUI offenders with more egregious prior crimes (such as murder) are convicted only of misdemeanors for their current DUI offenses and are not subject to Three Strikes sentencing. The contention is without merit because DUI offenders with prior DUI manslaughter convictions are not similarly situated with DUI offenders who have prior convictions other than for DUI manslaughter. Based on this equal protection argument, defendant

---

[2] In his petition, petitioner also argues a violation of the Eighth Amendment in this claim. However, petitioner's Eighth Amendment arguments appear to all be raised in his claim four and will be addressed by the court in the discussion of that claim.

also claims the different treatment violates his due process rights and right not to be subjected to cruel and unusual punishment. These separate claims are both without merit.

## A. Not Similarly Situated

Equal protection under the state and federal Constitutions requires that persons similarly situated must receive like treatment under the law. (*In re Eric J.* (1979) 25 Cal.3d 522, 531, 159 Cal.Rptr. 317, 601 P.2d 549.) Therefore, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*Id.* at p. 530, 159 Cal.Rptr. 317, 601 P.2d 549, italics omitted.)

While defendant mentions several hypothetical prior convictions for unrelated crimes (such as rape, child molestation, and robbery), he focuses on comparing punishment when a defendant has a prior conviction for a drunk driving second degree murder and, as here, another defendant has a prior conviction for a DUI manslaughter. Following his lead, we focus on that comparison.

A DUI manslaughter is committed when a drunk driver, without malice, kills someone. (Pen.Code, § 191.5, subd. (a).) The punishment for the offense is four, six, or 10 years in state prison. (Pen.Code, § 191.5, subd. (c)(1).) If the intoxicated killer drove while aware of the risk to life and consciously disregarded that risk, then the killer committed second degree murder (*see People v. Watson* (1981) 30 Cal.3d 290, 179 Cal.Rptr. 43, 637 P.2d 279 (*Watson*)), a *Watson* murder. Punishment for second degree murder is 15 years to life in state prison. (Pen.Code, § 190, subd. (a).) DUI manslaughter is not a lesser included offense of a *Watson* murder. (*People v. Sanchez* (2001) 24 Cal.4th 983, 990–992, 103 Cal.Rptr.2d 698, 16 P.3d 118.)

Defendant ignores this significant difference in sentencing between a determinate term for DUI manslaughter and an indeterminate term—a life sentence—for a *Watson* murder. Instead, he cites only the differences in how prior convictions for these crimes are treated. He notes that, because he has a prior DUI manslaughter conviction, his current DUI is elevated to a felony DUI and subjects him to Three Strikes sentencing. In comparison, a DUI offender with a prior *Watson* murder is guilty of a misdemeanor only.

We recognize that the two schemes are very different. A *Watson* murder is punished much more severely upon conviction, but does not result in felony status or a longer sentence if the offender commits a later DUI. On the other hand, a DUI manslaughter is punished with a shorter determinate sentence, but can be used to impose much longer incarceration if the offender later commits a DUI. As we explain, this different treatment is the result of rational legislative choices rather than being unconstitutional disparate treatment because DUI offenders with a prior DUI manslaughter conviction are not similarly situated with DUI offenders with a prior *Watson* murder conviction.[fn 4]

12

Generally, offenders who commit different crimes are not similarly situated. (*People v. Macias* (1982) 137 Cal.App.3d 465, 472–473, 187 Cal.Rptr. 100.) In *People v. Dillon* (1983) 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697, the Supreme Court rejected an equal protection challenge to the felony-murder rule simply by observing that premeditated first degree murder and felony murder are "not the 'same' crime[ ]...." (*Id.* at p. 476, 194 Cal.Rptr. 390, 668 P.2d 697, fn. 23; *see also People v. Jacobs* (1984) 157 Cal.App.3d 797, 803–804, 204 Cal.Rptr. 234.) Therefore, a DUI offender with a prior DUI manslaughter conviction is not similarly situated with a DUI offender with a prior *Watson* murder conviction.

But there may be times when the general rule does not apply, when offenders who commit different crimes are similarly situated.[3] (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199–1200, 39 Cal.Rptr.3d 821, 129 P.3d 29 (*Hofsheier*).) The *Hofsheier* court held that offenders who commit different crimes are similarly situated for equal protection analysis when the crimes are not sufficiently different to justify different treatment. (*Id.* at p. 1200, 39 Cal.Rptr.3d 821, 129 P.3d 29.)

In *Hofsheier*, the court considered mandatory sex offender registration. State law required adults convicted of voluntary oral copulation with a minor 16 years or older to register for life as a sex offender; however, state law did not require adults convicted of voluntary sexual intercourse with a minor 16 years or older to register unless the trial court exercised its discretion to require registration. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1198, 39 Cal.Rptr.3d 821, 129 P.3d 29.)

The *Hofsheier* court held that the general rule (offenders who commit different crimes are not similarly situated) cannot be an absolute rule "because the decision of the Legislature to distinguish between similar criminal acts is itself a decision subject to equal protection scrutiny." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1199, 39 Cal.Rptr.3d 821, 129 P.3d 29, fn. omitted.) The equal protection clause " 'imposes a requirement of some rationality in the nature of the class singled out.' [Citations.] Otherwise, the state could arbitrarily discriminate between similarly situated persons simply by classifying their conduct under different criminal statutes. [Citation.]" (*Ibid.*)

Turning to its own facts, the *Hofsheier* court declared: "The only difference between the two offenses is the nature of the sexual act. Thus, persons convicted of oral copulation with minors and persons convicted of sexual intercourse with minors 'are sufficiently similar

---

[3] Petitioner relied heavily on <u>Hofsheier</u> in his state court briefing. It should be noted that in 2015 the California Supreme Court reversed <u>Hofsheier</u> in <u>Johnson v. Dep't of Justice</u>, 60 Cal. 4th 871 (2015). The California Supreme Court held that persons convicted of oral copulation, and other sex crimes, with minors and persons convicted of sexual intercourse with minors were not similarly situated, based primarily on the possibility of pregnancy resulting from sexual intercourse, and therefore the state law's differentiation of those crimes for purposes of sex offender registration requirements was not so irrational as to violate the Equal Protection Clause.

to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.' [Citation.]" (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200, 39 Cal.Rptr.3d 821, 129 P.3d 29.)

While the Supreme Court has not provided a bright-line rule for when those committing different crimes must be treated similarly, there can be no doubt that those who are convicted of a manslaughter can be treated differently from murderers. Specifically, DUI manslaughter and a *Watson* murder are not sufficiently similar to require similar treatment. A DUI manslaughter is committed by causing a death, without malice, while driving under the influence. (Pen.Code, § 191.5, subd. (a).) A *Watson* murder, on the other hand, requires implied malice. (*Watson*, supra, 30 Cal.3d 290, 179 Cal.Rptr. 43, 637 P.2d 279.) Implied malice has both physical and mental components, "the physical component being ' "the performance of 'an act, the natural consequences of which are dangerous to life,' " ' and the mental component being ' "the requirement that the defendant 'knows that his conduct endangers the life of another and ... acts with a conscious disregard for life.' " ' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508, 136 Cal.Rptr.3d 40, 267 P.3d 1113.) The critical difference between a DUI manslaughter and a *Watson* murder is the mental component: malice or conscious disregard for the life of another. A *Watson* murder, therefore, is more morally blameworthy than DUI manslaughter.

"The appropriate measure for punishment is individual culpability. [Citation.] It is the prerogative of the Legislature, and the electorate by initiative, to recognize degrees of culpability and penalize accordingly. [Citations.]" (*People v. Jacobs*, *supra*, 157 Cal.App.3d at p. 804, 204 Cal.Rptr. 234, fn. omitted.) And "[t]he fact that the Legislature has not included a small class of almost similarly situated persons in the disfavored class does not invalidate the legislation as to the disfavored class. There is no requirement that the Legislature penalize all culpable conduct or precisely structure penal sanctions so that all degrees of culpability are omnisciently placed in their proper place in some continuum of penalties." (*In re Sims* (1981) 117 Cal.App.3d 309, 314, fn. 1, 172 Cal.Rptr. 608.)

Therefore, because a DUI manslaughter and a *Watson* murder are so different as to culpability, the Legislature's different treatment of DUI offenders with prior convictions for DUI manslaughter or a *Watson* murder is permissible under the equal protection clause.

Defendant argues that the disparate treatment does not pass constitutional muster because, in his view, a person convicted of DUI manslaughter is treated more harshly than a person convicted of a *Watson* murder, even though the *Watson* murder is more blameworthy morally. He bases his view completely on the later effect of convictions for DUI manslaughter and a *Watson* murder when the offender commits a new DUI. However, this view can be sustained only if one ignores the difference in original sentencing for offenders convicted of DUI manslaughter (a determinate term of no more than 10 years (Pen.Code, § 191.5, subd. (c)(1)), plus up to

three years of parole (Pen.Code, § 3000, subd. (b)(2)) and a *Watson* murder (an indeterminate term of up to life (Pen.Code, 190, subd. (a)), plus parole for life after release (Pen.Code, § 3000.1, subd. (a)(1)). This difference can be attributed simply to the Legislature's determination to punish murderers more harshly up front and to be more lenient with those convicted of manslaughter, while providing for harsher punishment for those convicted of manslaughter if they later commit a crime that shows they have not reformed. There is " 'some rationality' " in this distinction. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1199, 39 Cal.Rptr.3d 821, 129 P.3d 29.) Therefore, for equal protection analysis, DUI offenders with a prior DUI manslaughter conviction are not similarly situated with DUI offenders with a prior *Watson* murder conviction.

Having determined that defendant's argument is unpersuasive as to the first prong of equal protection analysis, we need not consider the second prong—whether governmental interests justify disparate treatment—because there is no requirement that persons in different circumstances must be treated as if their situations were similar. (*See Hofsheier*, *supra*, 37 Cal.4th at p. 1200, 39 Cal.Rptr.3d 821, 129 P.3d 29.)

> [fn 4] We recognize that a *Watson* murder is not a specific crime enacted by the Legislature, but instead is a judicially created theory for prosecuting vehicular homicide as second degree murder in cases involving implied malice. (But see Pen.Code, §§ 191.5, subd. (e), 192, subd. (c)(3) [recognizing the *Watson* murder theory].) Nonetheless, we see no reason not to apply an equal protection analysis to the disparate treatment noted by defendant in this case.

Doyle, 220 Cal. App. 4th at 1264-68.

## B.  Legal Standards

The Equal Protection Clause requires, generally, that similarly situated persons be treated similarly.  See City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Equal protection is violated by intentional discrimination against a person based on his or her membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or by intentional treatment of a member of an identifiable class differently from other similarly situated individuals without a rational basis for the difference in treatment (i.e., a rational relationship to a legitimate state purpose), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  A state is not, however, precluded from placing persons in different classifications so long as the disparate classifications have a rational basis and are not based on traditional suspect classes:

15

> "The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made."

Estelle v. Dorrough, 420 U.S. 534, 538-39 (1975) (internal quotations and string citation omitted); see also Heller v. Doe by Doe, 509 U.S. 312, 319 (1993) ("a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity"). "For statutory challenges made on Equal Protection grounds, 'the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate governmental interest.'" United States v. Harding, 971 F.2d 410, 412 (9th Cir. 1992) (quoting City of Cleburne, 473 U.S. at 440). Further, "the rational basis standard does not require that the state choose the fairest or best means of advancing its goals." Robinson v. Marshall, 66 F.3d 249 (9th Cir. 1995) (rejecting equal protection challenge to Cal. Penal Code § 2900.5).

Federal courts should not "overturn [a statute that does not burden a suspect class or a fundamental interest] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Pennell v. City of San Jose, 485 U.S. 1, 14 (1988) (quoting Vance v. Bradley, 440 U.S. 93, 97 (1979)). "The law may be overinclusive, underinclusive, illogical, and unscientific and yet pass constitutional muster. In addition, under rational basis review, the government 'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" United States v. Pickard, 100 F. Supp. 3d 981, 1005 (E.D. Cal. 2015) (quoting Heller, 509 U.S. at 320).

This lowest level of review does not look to the actual purposes of the law. Instead it considers whether there is some conceivable rational purpose that legislators could have had in mind when they enacted the law. See SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 481 (9th Cir. 2014). "When conducting an equal protection analysis, we first identify the groups

16

being compared. 'The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified . . . .'" Taylor v. San Diego County, 800 F.3d 1164, 1169 (9th Cir. 2015) (citing Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1064 (9th Cir. 2014)). "While the group members may differ in some respects, they must be similar in the respects pertinent to the State's policy." Id.; Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Nordlinger, 505 U.S. at 10 (citations omitted).

**C. Analysis**

In the present case, petitioner has failed to demonstrate the use of his prior DUI manslaughter as an enhancement and as a prior felony strike under the Three Strikes sentencing law violates the Equal Protection Clause. No protected class is implicated by petitioner's claim that the statute unreasonably discriminates between those in his situation and one charged with a DUI with a more serious prior felony. Further, and as discussed by the state Court of Appeal, petitioner is not similarly situated to defendants with more serious prior felonies.

Petitioner identifies two classes: those with a DUI conviction and a prior DUI manslaughter and those with a DUI conviction and a prior more serious felony. As the state court notes, petitioner particularly focuses on defendants in the latter category with a prior crime of DUI second degree murder. The California legislature has distinguished these two categories of prior criminal behavior. As described above by the state court, the important difference between the two crimes is the mental state. Second degree murder requires proof of malice or conscious disregard for the life of another. Cal. Penal Code §§ 189, 191.5(e). DUI manslaughter lacks the mental state requirement. It is defined as causing death while intoxicated without malice. Cal. Penal Code § 191.5(a). The sentences possible for each crime reflect the state's recognition that second degree murder is more serious than DUI manslaughter. A defendant convicted of DUI second degree murder faces an indeterminate sentence of up to life in prison, plus required parole after release. Cal. Penal Code §§ 190(a), 3000.1(a)(1). A defendant convicted of DUI

manslaughter faces a maximum of ten years in prison and a maximum of three years of parole. Cal. Penal Code §§ 191.5(c)(1), 3000(b)(2). These distinctions demonstrate the state's intention to punish those charged with murder much more seriously than those charged with DUI manslaughter.

Petitioner's misdemeanor DUI was charged as a felony pursuant to California Penal Code § 23550.5(b). The California legislature's enactment of this section reflects an apparent policy of punishing recidivism. To this extent, the legislature's failure to include DUI second degree murder in the list of prior DUI offenses that may enhance a misdemeanor DUI does not particularly make sense. However, considering the section in this light ignores the larger statutory scheme. The legislature could have determined that punishing DUI second degree murder as a murder offense, with its more severe sentencing than DUI manslaughter, removed the need to also consider the DUI second degree murder as an enhancement to a later DUI. As the state Court of Appeal pointed out, the legislature could have considered that murder should be punished more severely up front while DUI recidivism could be punished with a collection of lesser crimes at a later time. This rationale is sufficient, given the extreme liberality with which this court must consider the distinctions created by state law, to justify the distinction made between a DUI charge with a prior DUI manslaughter and a DUI charge with a prior DUI second degree murder.

Petitioner's argument focuses on the seriousness of the prior crimes without considering these penalties imposed on each. The Equal Protection Clause "permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." Williams v. Illinois, 399 U.S. 235, 243 (1970). Further, the statutory scheme may consider "past life and habits of a particular offender" in sentencing. Id. (citing Williams v. New York, 337 U.S. 241, 247 (1949)). The state court's holding that petitioner was not similarly situated to those with prior more serious crimes is supported by these general principles. Petitioner has not presented, and this court cannot find, any clearly established federal law to the contrary.

////

### III.   Claim Four – Eighth Amendment

In his fourth claim, petitioner argues his Three Strikes sentence for a misdemeanor DUI violates the Eighth Amendment's prohibition on cruel and unusual punishment.

### A.  Legal Standards

The Eighth Amendment forbids "cruel and unusual punishments."  Petitioner appears to be relying on the Eighth Amendment's "narrow proportionality principle" that applies to noncapital sentences.  Ewing v. California, 538 U.S. 11, 20 (2003) (internal quotations and citations omitted).  The Eighth Amendment "'prohibits . . . sentences that are disproportionate to the crime committed.'"  Id. at 22 (quoting Solem v. Helm, 463 U.S. 277, 284 (1983)).  The Supreme Court set out three factors that "may be relevant" to a determination that a sentence is unconstitutionally disproportionate:   "'(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.'"  Id. (quoting Solem, 463 U.S. at 292.)  The Supreme Court has cautioned that "federal courts should be 'reluctan[t] to review legislatively mandated terms of imprisonment,' and that 'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare.'"  Hutto v. Davis, 454 U.S. 370, 374 (1982) (quoting Rummel v. Estelle, 445 U.S. 263, 274, 272 (1980)).

### B.  State Court Decision

> Punishing a lesser included offense more severely than the greater offense is unusual punishment under the state Constitution. (*People v. Schueren* (1973) 10 Cal.3d 553, 560–561, 111 Cal.Rptr. 129, 516 P.2d 833.) This principle, however, does not help defendant for two reasons: (1) DUI manslaughter is not a lesser included offense of a *Watson* murder (*People v. Sanchez, supra*, 24 Cal.4th at pp. 990–992, 103 Cal.Rptr.2d 698, 16 P.3d 118) and (2) a *Watson* murder carries a more severe sentence, along with lifetime parole, which could be violated for committing a misdemeanor DUI.

Doyle, 220 Cal. App. 4th at 1268.

### C.  Analysis

In state court, petitioner focused on the state law argument.  The California constitution bars a punishment that is cruel or unusual.  (See Pet. for Rev. (LD 5) at 33-35.)  The state court expressly addressed only the state constitutional ground for this claim.  As discussed above,

1    where the state court decision does not explicitly address the federal claim, this court "must

2    determine what arguments or theories . . . could have supported, the state court's" rejection of the

3    claim "and then it must ask whether it is possible fairminded jurists could disagree that those

4    arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme]

5    Court." Richter, 562 U.S. at 102.

6         Under federal law, petitioner's bears a heavy burden to show his sentence is

7    disproportionate. Plaintiff's limited argument about the length of his sentence for a misdemeanor

8    ignores both the fact that he plead to a felony DUI and his criminal history. This court is required

9    to compare the harshness of his penalty with the gravity of not only his triggering offense but of

10   his criminal history. Ewing, 538 U.S. at 28-29; Norris v. Morgan, 622 F.3d 1276, 1290 (9th Cir.

11   2010).

12        Petitioner was convicted of a felony and sentenced to a legislatively mandated term of

13   imprisonment. Petitioner has failed to demonstrate that his sentence constitutes an extraordinary

14   case for which the disproportionality principle reserves a constitutional violation. See Rummel,

15   445 U.S. at 274 ("[O]ne could argue without fear of contradiction by any decision of this Court

16   that for crimes concededly classified and classifiable as felonies, that is, as punishable by

17   significant terms of imprisonment in a state penitentiary, the length of the sentence actually

18   imposed is purely a matter of legislative prerogative.").

19        In fact, the United States Supreme Court has upheld challenges to Three Strikes sentences for

20   convictions less serious than the DUI conviction petitioner faced. In both Lockyer v. Andrade,

21   538 U.S. 63, 75 (2003) and Ewing v. California, 538 U.S. 11, 29 (2003), the Court considered

22   Three Strikes sentences for wobbler convictions like petitioner's – misdemeanor crimes that

23   could be charged as a felony based on a prior crime. In Andrade, the Court held that it was not an

24   unreasonable application of clearly established federal law for the California Court of Appeal to

25   affirm Three Strikes sentences of two consecutive 25 years-to-life imprisonment terms for two

26   convictions for petty theft of less than $200 worth of videotapes each, with prior conviction. In

27   Ewing, the Court held that a Three Strikes sentence of 25 years to life in prison imposed on a

28   conviction for theft of three golf clubs with a prior conviction was not grossly disproportionate

and did not violate the Eighth Amendment.  See also Nunes v. Ramirez–Palmer, 485 F.3d 432,

439 (9th Cir. 2007) (sentence of 25 years to life for crime of petty theft with a prior did not offend

the Constitution where petitioner had extensive and serious felony record); Taylor v. Lewis, 460

F.3d 1093, 1101–02 (9th Cir. 2006) (no Eighth Amendment violation where petitioner with prior

offenses involving violence was sentenced to 25 years to life for possession of. 036 grams of

cocaine base); Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (sentence of 25 years to life

for offense of petty theft with a prior imposed on petitioner with two prior robbery convictions

was not objectively unreasonable).

By comparison, petitioner's Three Strikes sentence for a second DUI after DUI manslaughter,

with prior crimes of spousal abuse and assault with a deadly weapon, does not lead to an

inference of gross disproportionality and therefore does not amount to cruel and unusual

punishment under the Eighth Amendment.

## IV.     Claim Five – Double Jeopardy

In his final claim, petitioner argues that the use of his prior DUI manslaughter conviction

both to elevate his DUI to a felony and to count for sentencing purposes violates the Double

Jeopardy Clause by punishing him a second time for his DUI manslaughter conviction.  This

claim is unsupported by any clearly established federal law.

The United States Supreme Court has "repeatedly upheld recidivism statutes 'against

contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto

laws, cruel and unusual punishment, due process, equal protection, and privileges and

immunities.'" Parke v. Raley, 506 U.S. 20, 27 (1992) (quoting Spencer v. Texas, 385 U.S. 554,

560 (1967)).  "Enhancement statutes, whether in the nature of criminal history provisions such as

those contained in the Sentencing Guidelines, or recidivist statues which are commonplace in

state criminal laws, do not change the penalty imposed for the earlier conviction." Nichols v.

United States, 511 U.S. 738, 747 (1994).

> In repeatedly upholding such recidivism statutes, [the Supreme
> Court has] rejected double jeopardy challenges because the
> enhanced punishment imposed for the later offense "is not to be
> viewed as either a new jeopardy or additional penalty for the earlier
> crimes," but instead as "a stiffened penalty for the latest crime,

21

which is considered to be an aggravated offense because a repetitive one."

<u>Witte v. United States</u>, 515 U.S. 389, 400 (1995) (quoting <u>Gryger v. Burke</u>, 334 U.S. 728, 732 (1948)).  Petitioner's Double Jeopardy claim should be denied.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  March 30, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/doyl2069.fr

22